UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUNIOR RAFAEL PEREZ,

                         Petitioner,                    Case # 19-CV-6147-FPG

v.

                                                       DECISION AND ORDER

KIRSTJEN NIELSEN, et al.,

                         Respondents.

      Petitioner Junior Rafael Perez brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Buffalo Federal Detention Facility. ECF No. 1. Petitioner argues that his prolonged detention without a bond hearing violates his due process rights, and he requests that the Court order the government to provide him with a bond hearing. The government has answered and filed its opposition to the petition. ECF Nos. 5, 6. For the reasons that follow, the petition is GRANTED.

## BACKGROUND

      The following facts are taken from the record. Petitioner is a native and citizen of the Dominican Republic. He arrived in the United States in January 1995 as a lawful permanent resident. In April 2004, he was convicted of attempted criminal possession of heroin and was sentenced to five years of probation. In January 2007, his probation was revoked and he was sentenced to a year in prison.

      In May 2015, Petitioner was arrested and charged with criminal possession of amphetamines and methamphetamines. In September 2015, the U.S. Department of Homeland Security ("DHS") instituted removal proceedings against Petitioner and took him into custody, alleging that he was removable as a result of the 2004 heroin conviction. ECF No. 6-2 at 28, 31. In February 2016, Petitioner was released from DHS custody and placed into the custody of the

New York City Department of Corrections at Rikers Island. In April 2016, an immigration judge granted Petitioner and the DHS's joint motion to administratively close his removal proceedings based on his incarceration at Rikers Island. *Id.* at 23.

In January 2017, Petitioner was convicted of the 2015 amphetamines and methamphetamines charges and sentenced to five years of imprisonment. In December 2017, he was taken back into DHS custody where it was determined he would stay pending a final administrative order in his removal case. *Id.* at 18. DHS moved to recalendar the removal proceedings and an immigration judge scheduled the initial removal hearing for February 20, 2018.

On that date, Petitioner appeared *pro se* and requested time to retain an attorney, so the immigration judge continued the hearing until March 8, 2018. On March 7, DHS served Petitioner with a notice of additional charges of removability based on his January 2017 conviction. *Id.* at 16. Petitioner appeared at the March 8 hearing *pro se* and asked the immigration judge for another continuance to review the additional charges and to retain an attorney. The immigration judge therefore continued the hearing until April 3, 2018.

On April 3, Petitioner appeared *pro se* again. The immigration judge provided him with an application for protection under the Convention Against Torture ("CAT") and continued the hearing until June 20, 2018, so that he would have an opportunity to complete his application and prepare for the hearing.

On June 20, 2018, Petitioner again appeared *pro se* without having completed his application for protection under the CAT. On that date, the immigration judge found that he had abandoned his CAT application and that he was otherwise statutorily ineligible for his requested relief, and ordered him removed to the Dominican Republic. *Id.* at 8.

In July 2018, Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). The BIA dismissed his appeal on December 14, 2018. *Id.* at 6.

On January 3, 2019, Petitioner filed a petition for review ("PFR") from the BIA's December 14, 2018 decision in the United States Court of Appeals for the Second Circuit. *Id.* at 5. On January 14, 2019, he filed an emergency motion for stay of removal. *Id.* at 2. Pursuant to a forbearance agreement between the DHS, the Department of Justice, and the United States Court of Appeals for the Second Circuit, DHS was prevented from executing the order of removal. *See In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit,* 702 F.3d 160, 162 (2d Cir. 2012). To date, Petitioner's PFR and motion to stay remain pending.

All told, Petitioner has now been detained by immigration authorities for more than seventeen months. Since December 2017, immigration authorities have twice reviewed Petitioner's custody determination and have decided to continue detention. Petitioner filed this petition on February 25, 2019.

## DISCUSSION

Petitioner argues that his continued detention without a bond hearing violates his Fifth Amendment due process rights and his Eighth Amendment right against excessive bail. As discussed below, the Court agrees.

### I. The Law Governing Petitioner's Detention

Several provisions of the Immigration and Nationality Act ("INA") authorize the detention of aliens pending removal. In this case, the parties do not dispute that, because Petitioner's removal proceedings are pending, he is being detained under 8 U.S.C. § 1226. ECF No. 1 at 3; ECF No. 5 at 2, 7.

Section 1226 governs the detention of aliens whose removal proceedings are ongoing. *See* 8 U.S.C. § 1226(a), (c); *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018) (explaining that "section 1226 governs the detention of immigrants who are not immediately deportable."). The Second Circuit has held that "[w]hen a court of appeals issues a stay pending judicial review of an

3

underlying removal order, the removal is not inevitable" and section 1226 thus governs detention. *Id.* at 56. In addition, this Court has held that section 1226 applies where an alien has a pending motion for stay of removal. *Thomas v. Whitaker*, No. 18-CV-6870, 2019 WL 1641251, at *3 (W.D.N.Y. Apr. 16, 2019).

Under section 1226, the default rule is that aliens may be released on bond or conditional parole while their removal proceedings are pending. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (citing section 1226(a) as the "default rule"). "Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Id.* This includes aliens, like Petitioner, who are inadmissible because they have committed a controlled-substance offense. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II). Section 1226(c) mandates the detention of these aliens during their removal proceedings and does not contemplate periodic bond hearings for them. *Demore v. Kim*, 538 U.S. 510, 518 (2003); *Jennings*, 138 S. Ct. at 842, 846 ("§ 1226(c) makes clear that detention of aliens within its scope must continue pending a decision on whether the alien is to be removed from the United States." (internal quotation marks omitted)); 8 U.S.C. § 1226(c)(1)(A).

## II. Due Process Rights Under Section 1226(c)

Numerous courts have held that mandatory detention under Section 1226(c) may violate an alien's due process rights if the alien is held for an unreasonably long period. *See, e.g.*, *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108, at *5 (S.D.N.Y. July 25, 2018) (collecting cases); *Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *6 (W.D.N.Y. Nov. 2, 2018) (same). Once the alien's detention exceeds a reasonable period, the alien may be entitled to relief, including the right to a bond hearing with appropriate procedural safeguards. *See, e.g.*, *Fremont v. Barr*, No. 18-CV-1128, 2019 WL 1471006, at *7 (W.D.N.Y. Apr. 3, 2019); *Hernandez*, 2018 WL 3579108, at *11-12. Courts are not uniform in the factors they consider when evaluating whether detention has become unreasonably prolonged, but two factors of

4

particular importance are (1) the length of detention and (2) the reason for delay.  *See Fremont*, 2019 WL 1471006, at *4-5; *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018); *Frederick v. Feeley*, No. 19-CV-6090, 2019 WL 1959485, at *2 (W.D.N.Y. May 2, 2019).  Applying these factors, the Court concludes that Petitioner's prolonged detention is unreasonable and unconstitutional.

First, Petitioner has been detained for over seventeen months.  This is beyond the point at which courts find detention unreasonably prolonged.  *See, e.g., Fremont*, 2019 WL 1471006, at *4 (collecting cases and noting that, after twelve months, courts "become extremely wary of permitting continued custody absent a bond hearing"); *Bermudez Paiz v. Decker*, No. 18-CV-4759, 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (finding sixteen-month detention unreasonable).

Second, the delays appear to be largely attributable to the normal administrative and appeals process.  The Second Circuit has made a distinction between aliens who have "substantially prolonged [their] stay by abusing the processes provided to [them]" and those who have "simply made use of the statutorily permitted appeals process."  *Hechavarria*, 891 F.3d at 56 n.6; *see also Brissett v. Decker*, 324 F. Supp. 3d 444, 453 (S.D.N.Y. 2018) ("[P]ursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged.").

Here, the government argues that "Petitioner's continued detention is specifically a result of his multiple requests for continuances before the immigration judge and of his decision to seek both administrative and judicial review of the immigration judge's removal order."  ECF No. 5 at 11.

Between his initial hearing on February 20, 2018 and his final hearing on June 20, 2018, Petitioner was granted three continuances.  They were granted, in part, to give Petitioner time to retain counsel (which he never did), and to fill out an application for protection under the

5

Convention Against Torture (which he also never did). However, one of the continuances was granted because DHS had just served Petitioner with a notice of additional charges the day before the hearing.

Even if this Court found that Petitioner was fully responsible for the delay caused by these continuances, this would only account for four out of the seventeen months of detention. The remaining thirteen months are attributable to the normal review process, which the government does not contend that Petitioner has abused or unreasonably protracted. The immigration judge ordered Petitioner's removal in June 2018; Petitioner timely appealed to the BIA the next month. The BIA dismissed his appeal on December 14, 2018; Petitioner's PFR was timely docketed on January 3, 2019. Shortly thereafter, on January 14, 2019, he filed his motion to stay removal, which remains pending. The next month, on February 25, 2019, Petitioner filed the instant petition. This suggests that Petitioner is attempting to raise his claims in good faith and not for the mere purpose of delaying his removal, as might be the case if he had filed untimely appeals or waited to file his petition only after the Second Circuit denied his appeal and his removal was imminent.

Under these circumstances, the Court concludes that Petitioner's due process rights have been violated insofar as he has been detained for an unreasonable period without a bond hearing. To be sure, the government has provided Petitioner with periodic "custody reviews," but these were inadequate because Petitioner, not the government, bore the burden of proving that he was not dangerous or a risk of flight. *See* ECF No. 5 at 12-13. By contrast, this Court and others have held that "due process requires that the Government demonstrate dangerousness or risk of flight by a clear and convincing standard." *Brissett*, 324 F. Supp. 3d at 453; *see also Wang v. Brophy*, No. 17-CV-6263, 2019 WL 112346, at *3 (W.D.N.Y. Jan. 4, 2019). Therefore, the government has not provided Petitioner with sufficient process to justify his continued detention.

Accordingly, Petitioner's continued detention is unreasonable and unconstitutional, and he is entitled to relief in the form of a bond hearing with proper procedural safeguards.[1]

## CONCLUSION

For the foregoing reasons, Petitioner is entitled to habeas relief under 28 U.S.C. § 2241 and the petition (ECF No. 1) is GRANTED. By June 25, 2019, Respondents shall hold a bond hearing for Petitioner before an immigration judge, at which the government bears the burden of proving by clear and convincing evidence that his continued detention is justified based on risk of flight or danger to the community. If a bond hearing is not held by June 25, 2019, Respondents shall release Petitioner immediately with appropriate conditions of supervision. By June 27, 2019, Respondents shall file a notice with this Court certifying either (1) that a bond hearing was held by the applicable deadline, and the outcome thereof, or (2) that no bond hearing was held and that Petitioner was released with appropriate conditions of supervision. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 10, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[1] Because the Court grants the petition under a due process analysis, it does not reach Petitioner's Eighth Amendment claim.